OPINION
{¶ 1} Appellants, Sherry Sherrill Blount and Allen Blount, appeal from the judgment of the Franklin County Court of Common Pleas granting summary judgment to appellees, Schindler Elevator Corporation ("Schindler"), Spectacor Management Group ("Spectacor"), Eric Ashmore, Jim Matthews, Marc Dickson and Tim McCorkle. For the following reasons, we affirm.
 {¶ 2} On April 15, 1997, appellant, Sherry Sherrill Blount, was working as a pizza stand manager for Aramark Services at the Columbus Convention Center ("Convention Center"). When appellant's shift ended at 10:30 p.m., she and a co-worker, Sheila Moorer, boarded an escalator located on the north side of the Convention Center. The women were approximately halfway down the escalator when it allegedly stopped abruptly. Due to the abrupt stop, appellant fell forward. Ms. Moorer, who was standing behind appellant, fell onto appellant. After both appellant and Ms. Moorer collected themselves, they walked down the unmoving escalator stairs and reported the incident to their supervisor and a Convention Center security guard.
 {¶ 3} For the six months prior to appellant's fall, appellee Schindler had been under contract with the Convention Center to inspect and maintain the escalator. At the time of the accident, appellee Spectacor was the managing agent of the Convention Center and was responsible for the day-to-day operations of the facility.
 {¶ 4} On April 15, 1999, appellants filed suit asserting negligence claims against Schindler and Spectacor for injuries appellant allegedly sustained due to her fall on the escalator. This suit was voluntarily dismissed by appellants without prejudice on February 2, 2000.
 {¶ 5} On January 24, 2001, appellants refiled their suit against Spectacor, and Jim Matthews and Marc Dickson, two of Spectacor's employees (collectively the "Spectacor appellees"), as well as against Schindler, and Eric Ashmore and Tim McCorkle, two of Schindler's employees (collectively the "Schindler appellees"). In their complaint, appellants alleged that the Schindler appellees were negligent in their inspection and maintenance of the escalator, and that the Spectacor appellees were negligent in their supervision of the repair and maintenance of the escalator.
 {¶ 6} When appellants filed the present action, they instructed the clerk of courts to serve each appellee with a copy of the summons and complaint via certified mail. However, not all of the appellees received personal service. The copy of the summons and complaint sent by certified mail to Schindler was returned to the clerk of courts marked "NOT DELIVERABLE AS ADDRESSED UNABLE TO FORWARD." The copy of the summons and complaint sent to Eric Ashmore was also returned, marked "MOVED, LEFT NO ADDRESS." After this initial attempt at service failed, appellants did not again attempt to serve either Schindler or Ashmore.
 {¶ 7} Appellants directed the clerk of courts to serve a copy of the summons and complaint on Tim McCorkle, the third Schindler appellee, at the Schindler branch office where McCorkle was employed at the time of the accident. Although the clerk of courts received a return receipt for this summons and complaint, the receipt was signed by "Betty Haddox." McCorkle had not worked at Schindler for seven months.
 {¶ 8} On March 1, 2001, the Schindler appellees jointly filed an answer to appellants' complaint. In their answer, the Schindler appellees asserted the affirmative defenses of insufficiency of service of process and lack of personal jurisdiction.
 {¶ 9} On October 24, 2001, the Schindler appellees filed a summary judgment motion, arguing that no genuine issues of material fact existed and that they were entitled to judgment as a matter of law. Thereafter, appellants filed a memorandum contra, arguing that specified affidavits, exhibits and citations to deposition testimony established that there were genuine issues of material fact. The trial court never ruled upon the Schindler appellees' October 24, 2001 summary judgment motion.
 {¶ 10} Subsequently, the Spectacor appellees filed a motion for summary judgment, arguing that the undisputed facts established that they did not breach any duty owed to appellants.
 {¶ 11} On February 2, 2002, the Schindler appellees filed a motion for leave to file a second motion for summary judgment. The trial court granted this motion. In their second motion for summary judgment, the Schindler appellees argued that appellants' claims were barred by the statute of limitations, given that appellants failed to recommence their action against the Schindler appellees within the one-year grace period allowed by R.C. 2305.19, the savings statute.
 {¶ 12} Appellants failed to file memoranda contra in response to either of these summary judgment motions, although appellants did file a motion to strike the affidavits and exhibits attached to the Spectacor appellees' motion.
 {¶ 13} On May 23, 2002, the trial court issued a decision granting the Spectacor and the Schindler appellees' motions for summary judgment. The trial court also granted in part and denied in part appellants' motion to strike. Appellants appeal from this judgment.
 {¶ 14} On appeal, appellants assign the following errors:
 {¶ 15} "[1.] The trial court erred in granting summary judgment for the Schindler Defendants' Motion for Summary Judgment because Appellees made a voluntary appearance and voluntarily waived their affirmative defenses.
 {¶ 16} "[2.] The trial court erred in dismissing Appellees Schindler, Ashmore, and McCorkle for failing to commence the re-filed action as required by R.C. § 2305 and Civ.R. 3(A) as Appellees had been served with process and thus the action had been commenced.
 {¶ 17} "[3.] The trial court erred in granting Appellees' Spectacor Management Group, Jim Matthews, and Marc Dickson, Motion for Summary Judgment as there were general issues of material fact."
 {¶ 18} We will address appellants' second assignment of error first. By appellants' second assignment of error, they argue that they properly commenced their action against the Schindler appellees within the time frame permitted by R.C. 2305.19.
 {¶ 19} Generally, negligence actions such as appellants' must be brought within two years of when the cause of action accrued. R.C. 2305.10
("[a]n action for bodily injury or injuring personal property shall be brought within two years after the cause thereof arose"). However, pursuant to R.C. 2305.19, "[i]n an action commenced, or attempted to be commenced, * * * if the plaintiff fails otherwise than upon the merits, and the time limited for the commencement of such action at the date of * * * failure has expired, the plaintiff * * * may commence a new action within one year after such date." Thus, if a plaintiff recommences his action within one year after a voluntary dismissal, he may avoid the operation of the statute of limitations.
 {¶ 20} In the case at bar, appellants originally filed an action against the Schindler appellees seeking recovery for appellants' injuries on April 15, 1999 — the day before the two-year statute of limitations would have expired. Appellants, however, voluntarily dismissed this original action on February 2, 2000. The present action, in which appellants reassert the same negligence claims they asserted in the original action, was filed on January 24, 2001. Because the present action was filed after the lapse of the two-year statute of limitations, it is barred unless appellants properly "commenced" their action within one year of the voluntary dismissal of their original action.
 {¶ 21} According to R.C. 2305.17, "[a]n action is commenced * * * by filing a petition in the office of the clerk of the proper court together with a praecipe demanding that summons issue or an affidavit for service by publication, if service is obtained within one year." (Emphasis added.) See, also, Civ.R. 3(A) ("[a] civil action is commenced by filing a complaint with the court, if service is obtained within one year from such filing upon a named defendant").
 {¶ 22} In the case at bar, neither Schindler nor Ashmore received personal service within one year of the filing of appellants' complaint; rather, the only copies of the summons and complaint mailed to Schindler and Ashmore were returned to the clerk of courts as undeliverable. On the other hand, the copy of the summons and complaint addressed to McCorkle at a Schindler branch office was received. Appellants argue that the receipt of the copy of this summons and complaint effected proper service of Schindler, Ashmore and McCorkle. We disagree.
 {¶ 23} "So long as service is `reasonably calculated' to reach interested parties, then the service is constitutionally sound." Akron-Canton Regional Airport Auth. v. Swinehart (1980), 62 Ohio St.2d 403,406. Thus, although a defendant may be served at a business address via certified mail, such an attempt at service must be "reasonably calculated" to reach the defendant. Id. Courts will "look suspiciously at any service attempted by means falling short of that most likely to achieve success." Id.
 {¶ 24} First, we conclude that service upon McCorkle was not made in a manner "reasonably calculated" to give McCorkle notice of the action. By the time the summons and complaint was received by the Schindler branch office, McCorkle had not worked for Schindler for seven months. Given that McCorkle was not even employed at the business address to which the complaint and summons were sent, this attempt at service did not comport with due process. See Call Detroit Diesel Allison, Inc. v. C. D. Oil Co. (Oct. 25, 1985), Tuscarawas App. No. CA 85A05-038 (pointing out that service was not "reasonably calculated" to reach a defendant when the summons and complaint were mailed to a place of business where the defendant no longer worked).
 {¶ 25} Second, we conclude that mailing a complaint and summons to a Schindler branch office addressed to a former employee is not a method of service "reasonably calculated" to reach Schindler or Ashmore. Therefore, the failed attempt to serve McCorkle did not effect service of Schindler or Ashmore.
 {¶ 26} Because service was not perfected upon any of the Schindler appellees, this action never "commenced" against them. Consequently, we conclude that appellants are not entitled to the protection of R.C. 2305.19
and, thus, summary judgment was properly granted in favor of the Schindler appellees based upon the expiration of the applicable statute of limitations. Accordingly, we overrule appellants' second assignment of error.
 {¶ 27} By their first assignment of error, appellants argue that the Schindler appellees voluntarily appeared before the trial court, thereby commencing the action and giving the trial court personal jurisdiction over the Schindler appellees. Again, we disagree. As we explained above, the operative issue here is whether appellants "commenced" their action within one year of the voluntary dismissal of their original complaint, as required by R.C. 2305.19. Pursuant to R.C.2305.17 and Civ.R. 3(A), an action is only "commenced" by obtaining service within one year of the filing of the complaint. Even if a plaintiff could "commence" an action through a defendant's voluntary appearance, appellants failed to show that the Schindler appellees voluntarily submitted to the trial court's jurisdiction. "A defendant who raises an affirmative defense for insufficiency of service of process before actively participating in the case continues to have an adequate defense relating to service of process." Coke v. Mayo (Feb. 4, 1999), Franklin App. No. 98AP-550. (Emphasis sic.) See, also, First Bank of Marietta v. Cline (1984), 12 Ohio St.3d 317, 318; Wise v. Qualified Emergency Specialists, Inc. (Dec. 17, 1999), Hamilton App. No. C-980802 ("one does not, by participating in a case, waive in personam jurisdiction once the defense of lack of proper service of process has been raised"); Bell v. Midwestern Educational Serv., Inc. (1993),89 Ohio App.3d 193, 203-204 ("[t]he appellees properly raised the issue of sufficiency of service as an affirmative defense in their first responsive pleading and they do not waive it by * * * going to trial on the merits"). Because the Schindler appellees asserted the affirmative defense of failure of service of process in their answer, they continued to have a valid defense, even though they participated in pre-trial litigation. Consequently, the Schindler appellees never voluntarily submitted to the trial court's jurisdiction. The action against the Schindler appellees never commenced as defined by R.C. 2305.17 and Civ.R. 3(A).
 {¶ 28} Appellants argue that Maryhew v. Yova (1984),11 Ohio St.3d 154, compels this court to reach the opposite conclusion. We disagree. In Maryhew, the Supreme Court held that personal jurisdiction may be acquired "either by service of process upon the defendant, the voluntary appearance and submission of the defendant or his legal representative, or by certain acts of the defendant or his legal representative which constitute an involuntary submission to the jurisdiction of the court." Id. at 156. However, because the defendant in Maryhew did not file any responsive pleading, the Supreme Court did not address the determinative issue here, i.e., whether a defendant voluntarily submits to a trial court's jurisdiction by participating in litigation, even though the defendant asserts the defense of insufficiency of process in its first responsive pleading. Therefore, the holding in Maryhew does not alter our conclusion that the Schindler appellees did not voluntarily submit to the trial court's jurisdiction. Accordingly, we overrule appellants' first assignment of error.
 {¶ 29} By appellants' third assignment of error, they argue that the existence of genuine issues of material fact prevented the grant of summary judgment to the Spectacor appellees.
 {¶ 30} Appellate review of summary judgment motions is de novo. Helton v. Scioto Cty. Bd. of Commrs. (1997), 123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183.
 {¶ 31} When a party seeks summary judgment on the ground that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the non-moving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. After the moving party has satisfied this initial burden, the non-moving party has a reciprocal duty to set forth specific facts showing that there is a genuine issue of material fact and, if the non-moving party does not so respond, summary judgment should be entered for the moving party. Id.
 {¶ 32} In order to establish actionable negligence, a plaintiff must show the existence of a duty, a breach of the duty and an injury resulting proximately from the breach. Jeffers v. Olexo (1989),43 Ohio St.3d 140, 142. Although no Ohio precedent has addressed the duty of a managing agent to a third party, that duty is defined by Restatement of the Law 2d, Torts (1965) 142, Section 324A:
 {¶ 33} "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
 {¶ 34} "* * *
 {¶ 35} "(b) he has undertaken to perform a duty owed by the other to the third person * * *[.]"
 {¶ 36} Therefore, as Comment d to this Restatement section states, "a managing agent who takes charge of a building for the owner, and agrees with him to keep it in proper repair, assumes the responsibility of performing the owner's duty to others in that respect." Consequently, a managing agent is subject to liability if his negligent failure to repair results in injury to a third person. Id.
 {¶ 37} In the case at bar, the Spectacor appellees presented evidence showing that they did not breach their duty of reasonable care. Prior to the April 15, 2001 incident, none of the appellees had ever known the escalator to stop abruptly. Moreover, the evidence presented established that the escalator was the subject of regular maintenance. Both Ashmore, the Schindler mechanic maintaining the Convention Center escalators, and Jeff Davis, a Branch Manager for Schindler, testified that, for the six months prior to the incident, the escalator was inspected and maintained by Schindler as required by the terms of the preventative maintenance agreement. That agreement provided that Schindler would "regularly and systematically examine, clean, lubricate, adjust and, when conditions warrant, repair or replace" various components of the escalators. Indeed, Ashmore testified that he was at the Convention Center every work day to inspect the operation of the escalators and to do any necessary repairs or maintenance.
 {¶ 38} Further, Marc Dickson, the security manager at the Convention Center, testified that he and other security guards regularly checked the escalators for operational problems. If any security personnel observed a problem, they would immediately contact Schindler. Likewise, James Matthews, a former assistant chief engineer at the Convention Center, testified that he would make rounds of the Convention Center looking for problems with the escalators. Accordingly, the evidence the Spectacor appellees presented establishes that they exercised reasonable care toward third persons by monitoring and maintaining the escalator.
 {¶ 39} Because the Spectacor appellees demonstrated the absence of a genuine issue of material fact with respect to the breach of any duty, appellants were required to rebut the Spectacor appellees' evidence in order to avoid summary judgment. Dresher, supra, at 293. Appellants, however, failed to file a memorandum contra identifying those portions of the record that demonstrated a genuine issue of material fact. Therefore, the trial court properly granted summary judgment in favor of the Spectacor appellees. Yet, appellants now point to the testimony it cited in response to the Schindler appellees' first summary judgment motion, filed approximately three months before the Spectacor appellees' summary judgment motion, and argue that the trial court erred in not considering this evidence. We disagree.
 {¶ 40} Particularly in cases that include multiple parties and generate voluminous records, a trial court cannot be expected to search through the record to find some evidence that allegedly supports the existence of a material issue of fact. Progressive Cas. Ins. Co. v. Bryan (June 30, 1994), Lake App. No. 93-L-188; Teetors v. Benson Truck Bodies, Inc. (Feb. 25, 1994), Sandusky App. No. S-93-9; Molden v. Davey Tree Co. (Aug. 3, 1990), Trumbull App. No. 89-T-4201. Rather, the burden is on the party opposing summary judgment to "set forth specific facts showing that there is a genuine issue for trial." Dresher, supra, at 293. Therefore, the trial court acted properly in evaluating only the evidence and arguments specifically set forth before it. The trial court was under no obligation to search the record for potentially relevant evidence or to create arguments for appellants based upon that evidence — particularly when the alleged evidence is contained in a response to another party's dispositive motion.
 {¶ 41} Because appellants only assert arguments and point to evidence that they failed to timely present before the trial court, we overrule appellants' third assignment of error.
 {¶ 42} For the foregoing reasons, we overrule appellants' assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BRYANT and LAZARUS, JJ., concur.