[Cite as *Rokakis v. Faith Christian Ctr.*, 2012-Ohio-3081.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
### No. 97663

---

## JAMES ROKAKIS, AS TREASURER

### PLAINTIFF-APPELLEE

vs.

## FAITH CHRISTIAN CENTER, ET AL.

### DEFENDANTS-APPELLANTS

---

## JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-719604

**BEFORE:** Cooney, J., Blackmon, A.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** July 5, 2012

**ATTORNEY FOR APPELLANT**

Donald R. Murphy
12800 Shaker Blvd.
Cleveland, Ohio 44120


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

By: Anthony J. Giunta, Jr.
Michael A. Kenny, Jr.
Assistant County Prosecutors
8th Floor, Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

COLLEEN CONWAY COONEY, J.:

**{¶1}** This case came to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 11.1. Defendant-appellant, Faith Christian Center ("FCC"), appeals the trial court's denial of its motion for relief from judgment. We find no merit to the appeal and affirm.

**{¶2}** Plaintiff-appellee, James Rokakis ("Rokakis"), former Cuyahoga County Treasurer, filed a complaint, on behalf of Cuyahoga County ("the County"), against FCC for collection of delinquent taxes, assessments, and penalties for parcel 791-25-062 ("the property"). FCC is a nonprofit organization that operates as a church. The property, which had previously been owned by a hotel, contains a building with 168 rooms and an adjoining restaurant. FCC used the property as a homeless shelter and hunger center. It also provided re-entry services for inmates returning to the community through its collaboration with Genesis Community Improvement Corp.

**{¶3}** The property, which is located on Rockside Road in Bedford Heights, was certified delinquent in taxes in 2006 pursuant to R.C. 321.24. FCC acquired the property in December 2008. At that time, the property had over $200,000 in delinquent taxes. There is no evidence that FCC ever sought a tax exemption or remission of tax on the property.

**{¶4}** Rokakis filed the complaint against FCC and several lienholders on February 26, 2010 and attempted service on Sue McDaniel, FCC's statutory agent. After

service on McDaniel was returned as "attempted not known," Rokakis attempted service at FCC's mailing address c/o Michael J. McDaniel. This attempt at service was also returned as "addressee unknown." Consequently, Rokakis sent the complaint to the Ohio Secretary of State pursuant to R.C. 1702.06, which the court found constituted effective service.

{¶5} Although FCC never filed an answer, Michael McDaniel, an officer of FCC, appeared at court conferences held in June and November 2010. Following a tax hearing, a foreclosure magistrate issued a decision recommending the court grant the County's request for foreclosure on the property on December 15, 2010. FCC filed no objections to the magistrate's decision, and the court adopted the decision in January 2011, thus granting foreclosure on the property. FCC filed no appeal but filed a counterclaim in March 2011 and a motion for default judgment in May 2011. On November 21, 2011, FCC filed a "motion to set aside 11/19/10 tax decree of foreclosure and prohibit sheriff's sale." The trial court denied the motion, stating, in part:

> In attempting to vacate the foreclosure decree entered 1/13/11, FCC fails to set forth any of the factors necessary to recover under Civ.R. 60(B), as those 60(B) requirements are stated in *GTE Automatic Electric v. Arc Industries* (1976) 47 Ohio St.2d 146-150-151[, 351 N.E.2d 113].

{¶6} FCC now appeals, raising one assignment of error arguing that the trial court erred in denying its motion for relief from judgment. It contends the judgment in foreclosure should be vacated because it never received proper service of the complaint. As such, it claims it was denied its constitutional right to due process.

{¶7} An appellate court will not reverse the trial court's ruling on a motion for relief from judgment unless the trial court abused its discretion. *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 20, 520 N.E.2d 564 (1988). An abuse of discretion standard requires a showing that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *In re Jane Doe 1*, 57 Ohio St.3d 135, 137, 566 N.E.2d 1181 (1991). When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993).

{¶8} To prevail on a Civ.R. 60(B) motion to vacate judgment, the moving party must demonstrate the following: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken. *GTE*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), paragraph two of the syllabus.

{¶9} These requirements are independent and written in the conjunctive; therefore, all three must be clearly established in order to be entitled to relief. *Id.* at 151. They must be shown by "operative facts" that demonstrate the movant's entitlement to relief. *Rose Chevrolet* at 21. Although the movant is not required to submit evidentiary material in support of the motion, the movant must do more than make bare allegations of entitlement to relief. *Kay v. Marc Glassman, Inc.*, 76 Ohio St.3d 18, 20, 1996-Ohio-430,

665 N.E.2d 1102. When the movant fails to demonstrate any of the three requirements under the *GTE* test, the court must deny the motion. *Rose Chevrolet* at 20.

{¶10} In its motion to set aside the foreclosure judgment, FCC did not argue that the foreclosure judgment should be vacated pursuant to Civ.R. 60(B). Indeed it never mentions Civ.R. 60(B) or the *GTE* requirements. On appeal, it argues that the authority to vacate judgments "is not derived from Civ.R. 60(B) but rather constitutes an inherent power possessed by Ohio Courts." It further claims that "the trial court's determination of a common-law motion to vacate does not turn on Civ.R. 60(B)'s requirements that the movant file timely and present a meritorious defense." In support of these claims, FCC relies on the court's syllabus in *Patton v. Deimer*, 35 Ohio St.3d 68, 518 N.E.2d 941 (1988). However, paragraph four of the syllabus in *Patton* states that "[t]he authority to vacate a *void* judgment is not derived from Civ.R. 60(B) but rather constitutes an inherent power possessed by Ohio courts." (Emphasis added.) *Id.*

{¶11} FCC suggests the judgment in foreclosure was void because the County never served FCC with notice of the pending foreclosure action and that the trial court therefore lacked jurisdiction. FCC also claims the court's foreclosure judgment violated its constitutional right to due process because it was rendered without providing it adequate notice.

{¶12} In support of its argument, FCC relies on several cases from the United States Supreme Court where the court recognized that a lienholder possesses a substantial property interest that is significantly affected by a tax sale and is therefore entitled to due

process. For example, FCC cites *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), in which an Indiana county sold property at a tax sale for nonpayment of taxes without mailing notice to its mortgagee. Notice consisted of a posting in the courthouse and newspaper publications. Following the sale, the purchaser filed suit to quiet title. The mortgagee argued the sale should be vacated because it never received constitutionally adequate notice of the sale and never had the opportunity to redeem the property as provided under Indiana law. The United States Supreme Court held that notice by publication was insufficient and did not satisfy due process requirements. *Adams* at 800. The court went on to hold:

> Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, *if its name and address are reasonably ascertainable.* (Emphasis added.) *Id*.

{¶13} In the instant case, the County made two attempts at service by mail, first to FCC's statutory agent, and then to its mailing address. When neither of these attempts were successful, the County sent notice to the Ohio Secretary of State pursuant to Civ.R. 4.2 and R.C. 1702.06(H). Civ.R. 4.2 provides that "[s]ervice of process * * * shall be made * * * [u]pon a corporation either domestic or foreign: by serving the agent authorized by appointment or by law to receive service of process." R.C. 1702.06(H) provides, in pertinent part:

Any process, notice, or demand required or permitted by statute to be served upon a corporation may be served upon the corporation by delivering a copy of it to its agent, if a natural person, or by delivering a copy of it at the address of its agent in this state, as such address appears upon the record in the office of the secretary of state. If (1) the agent cannot be found, or (2) the agent no longer has that address * * * service of process, * * * may be initiated by delivering to the secretary of state or at the secretary of state's office triplicate copies of such process, notice, or demand and by paying to the secretary of state a fee of five dollars. The secretary of state shall forthwith give notice of such delivery to the corporation at its principal office as shown upon the record in the secretary of state's office and also to the corporation at any different address set forth in the above mentioned affidavit, and shall forward to the corporation at each of those addresses, by certified mail, with request for return receipt, a copy of such process, notice, or demand; and thereupon service upon the corporation shall be deemed to have been made.

{¶14} These provisions comport with the minimum due process requirements set forth in *Adams* because they require notice to a corporation be sent by mail, "if its name and address are reasonably ascertainable." *Adams* at 800. R.C. 1702.06(A) requires every corporation have and maintain an agent, sometimes referred to as the "statutory agent." When a corporation changes its mailing address, R.C. 1702.06(E) imposes a duty on the statutory agent to "forthwith file with the secretary of state * * * written statement setting forth the new address." Obviously these rules are intended to ensure corporations receive adequate notice when necessary to comply with due process requirements.

{¶15} FCC apparently failed to provide the Secretary of State with a correct mailing address and therefore thwarted the County's efforts to provide notice. Because the record demonstrates that the County made every effort required by law to obtain service on FCC, and because Michael McDaniel and his counsel appeared at hearings in

the trial court, we find no violation of due process.[1]   FCC was served in accordance with the law, and the court had jurisdiction to render the foreclosure judgment against FCC.

{¶16} FCC further argues that Michael McDaniel's appearance in court as an observer for FCC cannot properly be held to be grounds for declaring FCC waived process.  In support of this argument, it cites *Gliozzo v. Univ. Urologists of Cleveland*, 114 Ohio St.3d 141, 2007-Ohio-3762, 870 N.E.2d 714.   However, the syllabus of *Gliozzo* states:

> When the affirmative defense of insufficiency of service of process is properly raised and properly preserved, a party's active participation in the litigation of a case does not constitute waiver of that defense.  (*First Bank of Marietta v. Cline* (1984), 12 Ohio St.3d 317, 12 OBR 388, 466 N.E.2d 567, applied.)

{¶17} FCC misreads this holding as protecting its failure to raise the defense of insufficiency of process.  However, the critical distinction in *Gliozzo* is that the defense was properly preserved in the defendant's answer.  Thus, active participation in the litigation did not constitute a waiver of the defense.

{¶18} In the instant case, we note FCC's attendance at the settlement conference and tax hearing because the attendance defeats FCC's argument that it had no notice of the proceedings and its due process rights were violated.  Clearly, FCC had actual notice and could have filed an answer raising the affirmative defense.  It cannot wait until ten

---

[1]The record reflects Michael McDaniel attended two hearings, one with counsel.   Moreover, FCC requested a hearing on June 3, 2010, thus demonstrating it had actual notice of the proceedings.

months after final judgment to seek to vacate the foreclosure when it had actual knowledge of the final judgment.

{¶19} Moreover, because FCC made no effort to comply with the requirements of Civ.R. 60(B), as set forth in *GTE*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), but waited over ten months, we find the trial court properly denied FCC's motion for relief from judgment.[2]

{¶20} Therefore, the sole assignment of error is overruled.

{¶21} Judgment affirmed.

---

[2]As for FCC's contention that the judgment should be vacated because, as a not-for-profit organization, it is exempt from any tax obligation, there is no evidence that FCC applied for a tax exemption under R.C. 5709.121 and 5715.27(F). R.C. 5715.27 imposes a duty on the not-for-profit organization to apply for an exemption prior to the thirty-first day of December of the tax year for which exemption is requested. Having failed to comply with this statute, FCC cannot now claim to be exempt from taxes pursuant to this appeal.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
COLLEEN CONWAY COONEY, JUDGE

PATRICIA ANN BLACKMON, A.J., CONCURS;
MARY EILEEN KILBANE, J., DISSENTS